IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO.19-01022 (ESL) |
| PUERTO RICO HOSPITAL SUPPLY INC. | CHAPTER 11 |
| Debtor | |
| IN RE: | CASE NO. 19-01023 (ESL) |
| CUSTOMED INC. | CHAPTER 11 |
| Debtor | |

OPINION AND ORDER

This case is before the court upon the United States Trustee's ("UST") *Motions to Dismiss pursuant to 11 U.S.C. §1112(b) and Memorandum of Law* (Case No. 19-01022, Docket No. 488; Case No. 19-01023, Docket No. 316); the *Answer to the Trustee's Motion to Dismiss Pursuant to 11 U.S.C 1112(b) and Memorandum of Law* filed by Puerto Rico Hospital Supply, Inc. ("PRHS") and Customed, Inc. (collectively referred to as the "Debtors") (Case No. 19-01022, Docket No. 502; Case No. 19-01023, Docket No. 328); the *Supplement to Answer to United States Trustee's Motion To Dismiss Pursuant to 11 U.S.C. 1112(b)* (Case No. 19-01022, Docket No. 504; Case No. 19-01023, Docket No. 330); and the UST's *Sur-Reply to Debtor's Reply to Motion to Dismiss* (Case No. 19-01022, Docket No. 528; Case No. 19-01023, Docket No. 350). Banco Santander de Puerto Rico  ("BSPR") as administrative agent for Santander Financial Services, Inc. and First Bank Puerto Rico ("SFS" and "First Bank" collectively the "Lenders") also filed its *Response to the U.S. Trustee's Motion to Dismiss*[1] (Case No. 19-01022, Docket No. 529; Case No. 19-01023,

---

[1] The Lenders posit that only if the court finds cause under Section 1112(b)(1), and does not find the exceptions under Section 1112(b)(2) applicable, the court should appoint a Chapter 11 Trustee to manage Debtors' affairs as a going concern, rather than dismissing or converting the case.

-1-

Case No. 351). For the reasons set forth below, the UST's motions to dismiss pursuant §1112(b) are denied.

### Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §157(b)(1) and (b)(2)(A). Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409.

### Procedural Background

On February 26, 2019, PRHS and Customed filed bankruptcy petitions under chapter 11 of the Bankruptcy Code. On the same date, the Debtors requested the substantial consolidation of the cases, alleging that the corporations share common ownership, corporate officers, sales force, accounting department, and billing software (Case No. 19-01022, Docket No. 2; Case No. 19-01023, Docket No. 2). On March 6, 2019, the Debtors and Banco Santander de Puerto Rico filed their *Urgent Stipulation for the Use of Cash Collateral, Adequate Protection and Reservation of Rights* (Case No. 19-01022, Docket No.26; Case No. 19-01023, Docket No. 22).

On March 7, 2019, the Debtors filed their *Motion Requesting Order Pursuant to 11 U.S.C. §§105 and 363 Authorizing Debtors' Continued Use of Existing Bank Accounts*, requesting a waiver on the requirement that bank accounts be closed and that new post-petition accounts be opened arguing that such disruption could impair the Debtors' ability to reorganize (Case No. 19-01022, Docket No. 29; Case No. 19-01023, Docket No. 25). The Debtors requested to be allowed to keep the bank accounts but to reclassify them as debtor-in-possession accounts.

On March 14, 2019, the UST filed its *Objection to Stipulation for Cash Collateral* alleging that it imposed limitations to the statutory duties, powers and/or responsibilities pursuant to the Bankruptcy Code and/or applicable rules to third parties who are not part of the stipulation such as any "creditor committee, "other party", "party in interest" or "any person", including the United States Trustee, and a Chapter 7 or Chapter 11 Trustee (Case No. 19-01022, Docket No. 38; Case No. 19-01023, Docket No. 32). On March 15, 2019, B. Braun Medical Inc. filed its *Objection to Approval of Stipulation of the Use of Cash Collateral, Adequate Protection and Reservation of Rights* arguing that it holds a claim against the Debtors of not less than $1.5 million, portions of

which were entitled to administrative priority treatment or reclamation rights and that the stipulation is procedurally deficient (Case No. 19-01022, Docket No. 43). The creditor further filed its *Objection of Creditor B. Braun Medical Inc. to Motion Requesting Substantive Consolidation* (Case No. 19-01022, Docket No. 44). On March 21, 2019, Johnson and Johnson International filed its *Motion for Joinder* to B. Braun Medical Inc.'s Objection to Motion requesting substantive consolidation (Case No. 19-01022, Docket No. 54) and its *Objection to Stipulation for the Use of Cash Collateral* (Case No. 19-01022, Docket No. 55). On March 22, 2019, the Debtors and BSPR as agent and Lender filed an *Amended Stipulation for the Use of Cash Collateral, Adequate Protection and Reservation of Rights* (Case No. 19-01022, Docket No. 65; Case No. 19-01023, Docket No. 44). Furthermore, the parties filed a *Joint Response to Objections to Cash Collateral Stipulation* (Case No. 19-01022, Docket No. 66; Case No. 19-01023, Docket No. 45).

On March 25, 2019, Carestream Health Puerto Rico, LLC filed its *Joinder to Objection of Creditor B. Braun Medical Inc. to Motion Requesting Substantive Consolidation (Docket No. 44)* (Case No. 19-01022, Docket No. 70). On March 27, 2019, B, Braun Medical Inc., filed an *Objection to Approval of Amended Stipulation for the Use of Cash Collateral, Adequate Protection and Reservation of Rights* (Case No. 19-01022, Docket No. 75).

On March 28, 2019, BSPR filed its *Urgent Motion for Entry of Order Approving Amended Stipulation, for the Interim Use of Cash Collateral* (Case No. 19-01023; Docket No. 50). On March 29, 2019, BSPR filed an *Urgent Motion for Entry of Order and Reply to Objection of Unsecured Creditor B. Braun Medical Inc. to Approval of Amended Stipulation for the Interim Use of Cash Collateral* (Case No. 19-01022, Docket No. 79). On March 29, 2019, the court granted the *Amended Stipulation for the Interim Use of Cash Collateral* (Case No. 19-01022, Docket No. 82; Case No. 19-01023, Docket No. 53).

On April 12, 2019, the UST filed its *Position as to Debtors' Motion Requesting Order for the Continued use of Existing Bank Accounts*, stating no opposition as to the conversion of the accounts, but opposing to the commingling of Customed and PRHS's funds (Case No. 19-01022, Docket No. 94; Case No. 19-01023, Case No. 59). On May 13, 2019, the Debtors filed their *Motion in Compliance with Order and Reply to US Trustee's Position as to Debtors' Request for Continued Use of Existing Bank Accounts* (Case No. 19-01022, Docket No. 122; Case No. 19-01023, Case No. 69).

On June 3, 2019, the court held a hearing to address the following contested matters: the substantive consolidation of the cases and the objections and the Amended Stipulation for the Use of the Cash Collateral, Adequate Protection and Reservation of Rights (Case No. 19-01022, Docket No. 141; Case No. 19-01023, Case No. 81). The request for substantial consolidation was held in abeyance, application for special counsel was approved by the court (Docket No. 113) and the parties informed that a joint motion for the use of cash collateral would be submitted.

On August 23, 2019, the Debtors filed a *Joint Disclosure Statement* (Case No. 19-01022, Docket No. 200; Case No. 19-01023, Case No. 111) and a *Joint Chapter 11 Plan of Reorganization* dated August 23, 2019 (Case No. 19-01022, Docket No. 201; Case No. 19-01023, Case No. 112). On October 22, 2019, Becton, Dickinson and Company filed an *Objection to Disclosure Statement and Plan of Reorganization* (Case No. 19-01022, Docket No. 233). Avanos Medical Inc. filed its *Limited Objection to Approval of the Adequacy of the Joint Disclosure Statement of Puerto Rico Hospital Supply Inc and Customed Inc.* (Case No. 19-01022, Docket No. 235) and Johnson & Johnson International, Inc. filed its *Objection to Approval of Joint Disclosure Statement* (Case No. 19-01022, Docket No. 236; Case No. 19-01023, Case No. 134). BSPR filed its *Objection to Disclosure Statement* on October 24, 2019 (Case No. 19-01022, Docket No. 238; Case No. 19-01023, Case No. 136).

On October 31, 2019, the unsecured creditor Yolanda Benitez, Cotto & Asocciates PSC filed its *Position as to Improper Classification of Claim and Treatment Under the Plan* (Case No. 19-01022, Docket No. 241).

On November 4, 2019, BSPR in its capacity as Lender and Agent filed an adversary proceeding against the Debtors requesting the court to determine the extent of Banco Santander's lien over the property of the Debtors, pursuant to Fed. R. Bank. P. 7001(2) (Adv. Proc. No. 19-00448).

During a hearing held on November 5, 2019, the court granted the Debtors 28 days to file a self-contained amended disclosure statement and an amended chapter 11 plan (Case No. 19-01022, Docket No. 245; Case No. 19-01023, Case No. 142).

On November 27, 2019, PRHS filed an A*pplication for Appointment of Realtor to Procure the Sale of Debtor's Warehouse and Office Building in Carolina, P.R.* (Case No. 19-01022, Docket No. 262) and on December 3, 2019, PRHS filed a *Motion Submitting Copy of Letter of Intent to Purchase Property* (Case No. 19-01022, Docket No. 264). On January 29, 2020, PRHS filed a *Motion for Entry of Sale Order: (A) Approving the Purchase and Sale Agreement of One*

*of Debtor's Realty, pursuant to section 363 of the Bankruptcy Code, Free and Clear of all Liens, Claims, Interests and Encumbrances; and (B) Approving the Form of the Sale Order* (Case No. 19-01022, Docket No. 326). On March 4, 2020, the court entered an *Order Approving Purchase and Sale Agreement and Sale of One of the Debtor's Realty, Pursuant to Section 363 of the Bankruptcy Code, Free and Clear of all Liens, Claims, Interests and Encumbrances* (Case No. 19-01022, Docket No. 356).

On April 3, 2020, the court entered and *Opinion and Order* dismissing the adversary proceeding filed by BSPR as agent of the Lenders, concluding that the Lenders' pre-petition and post-petition lien over the Debtors' contract rights and general intangibles does not extend to the proceeds of the award and ongoing litigation against Johnson & Johnson regarding a commercial tort claim (Adv. Proc. No. 19-00448, Docket No. 36) and *Judgment* was entered accordingly on April 5, 2020 (Adv. Proc. No. 19-00448, Docket No. 38). On April 17, 2020, the BSPR as agent for the Lenders filed a *Notice of Appeal and Statement of Election to District Court* (Case No. 19-00448, Docket No. 40). On May 11, 2020, BSPR as agent for the Lenders filed their *Motion for Stay Pending Appeal* (Lead Case 19-01022, Docket No. 412; Case No. 19-01023, Docket No. 253).

Subsequently, on June 18, 2020, BSPR as agent for Lenders and the *Debtors filed a Joint Motion for Extension of Time* to grant the Debtors until July 31, 2020 to state their position as to the disputed amounts and to oppose the *Motion for Stay Pending Appeal* and for the parties to finalize the drafting of a Settlement Agreement (Case No. 19-01022, Docket No. 465; Case No. 19-01023, Case No. 293).

On June 23, 2020, the Debtors filed *Informative Motions* disclosing that they had requested and received funds through the Payroll Protection Program ("PPP") of the Small Business Administration ("SBA") as a mean to maintain the business operational during the lockdown and as a consequence of the economic hardship provoked by the declaration of the Covid-19 pandemic. The Debtors inform that, "… management didn't carefully review SBA Form 2483 and passed over the restriction of question #1 thereof, as to being 'presently involved in bankruptcy'" which would have resulted in the denial of their PPP applications if answered affirmatively (Case No. 19-01022, Docket No. 469; Case No. 19-01023, Docket No. 298).

On July 13, 2020, the UST filed its *Motion to Dismiss Pursuant to 11 U.S.C. § 1112(b) and Memorandum of Law* (Case No. 19-01022, Docket No. 488; Case No. 19-01023, Case No. 316). On July 27, 2020, the Debtors filed their *Reply to the United States Trustee's Motion to*

*Dismiss Pursuant to 11. U.S.C. 1112(b) and Memorandum of Law* (Case No. 19-01022, Docket No. 502; Case No. 19-01023, Case No. 328) and a *Supplement to Answer to United Trustee's Motion to Dismiss Pursuant to 11 U.S.C. 1112(b) and Memorandum of Law* (Case No. 19-01022, Docket No. 504; Case No. 19-01023, Case No. 330). On August 3, 2020 the UST filed its *Sur-Reply to Debtor's Reply to motion to Dismiss* (Case No. 19-01022, Docket No. 516; Case No. 19-01023, Case No. 340). On August 7, 2020, a *Joint Pretrial Report* was filed by the Debtors and the UST (Case No. 19-01022, Docket No. 528; Case No. 19-01023, Case No. 350). On the same date, BSPR, as administrative agent of the Lenders filed its *Response to the U.S. Trustee's Motion to Dismiss* (Case No. 19-01022, Docket No. 529; Case No. 19-01023, Case No. 351).

On August 11, 2020, a hearing on the *Motion to Dismiss* was held on August 11, 2020 (Case No. 19-01022, Minutes at Docket No. 533; Case No. 19-01023, Case No. 353). Thereafter, on September 22, 2020, the Debtors and the Lenders filed an *Urgent Joint Motion to Hold in Abeyance Motion, for a Brief Period, the Adjudication of the Motion to Dismiss and Allowing Time to Inform of Settlement Efforts* (Case No. 19-01022, Docket No. 573; Case No. 19-01023, Docket No. 365) and the same were granted on September 23, 2020 (Case No. 19-01022, Docket No. 576; Case No. 19-01023, Docket No. 367).

Uncontested Material Facts

1. Debtors filed the voluntary petitions for relief on the Chapter 11 of February 26, 2019, (Case number 19-01022, Docket No. 1; Case No. 19-01023; Docket No. 1)

2. On or about April 6, 2020, the Debtors filed Forms 2483 under the Payroll Protection Program (PPP) of the SBA. (Pretrial Report, Exhibits III and IV).

3. The SBA forms 2483 were signed and executed by Debtors' President, Mr. Felix Santos on behalf of the Debtors. (Pretrial Report, Exhibits III and IV).

4. The SBA forms 2483 executed by Debtors state that "[i]f question (1) or (2) below are answered "Yes", the loan will not be approved". (Pretrial Report, Exhibits III and IV).

5. In question No. 1 of their respective SBA Forms 2483, Debtors answered "No" to being "presently involved in any bankruptcy". (Pretrial Report, Exhibits III and IV).

6. The SBA forms 2483 were processed through Banco Popular de Puerto Rico.

7. On or about April 14, 2020, and April 20, 2020, the applications were approved and disbursements in the amount of $836,000.00 made to Puerto Rico Hospital Supply Inc.

and $260,000 for Customed Inc. (Pretrial Report, Exhibit T, Declaration of Maritza Rodriguez, Debtors' Vice-President of Finance).

8. On or about April 20, 2020, Debtors opened each an account in Banco Popular de Puerto Rico to deposit the funds disbursed under the PPP. These bank accounts were not debtor-in-possession accounts. (Exhibit K, BPPR's bank statement for PRHS; Exhibit L, BPPR's bank statement for Customed).

9. Debtors did not file a motion under section 364(b) of the Bankruptcy Code and Fed. R. of Bankr. P. 4001(c) prior to applying under the PPP.

10. Debtors did not obtain authorization from the Bankruptcy Court or the UST's approval prior to opening the BPPR non-debtor-in-possession accounts.

11. On June 18, 2020, the Debtors filed the monthly operating report for April 2020 in which they disclosed the receipt of the PPP funds and the opening of the bank accounts with BPPR (Case No. 19-01022, Docket No. 464; Exhibits P and R; Case No. 19-01023, Docket No. 292; Exhibits Q and S).

12. On June 23, 2020, the Debtors filed *Motions to Inform* disclosing to the Court, creditors, parties in interest and the SBA as to the filing of Forms 2483. (Case No. 19-01022, Docket No. 469; Case No. 19-01023, Docket No. 298).

13. The PPP disbursements or parts thereof remained in the non-debtor-in-possession accounts until completely or partially spent or until their closure. (Exhibit K, BPPR's bank statement for PRHS; Exhibit L, BPPR's bank statement for Customed).

14. As of the date of filing of the *Motions to Inform*, Puerto Rico Hospital Supply, Inc. had available $176,286.58 from the funds disbursed under the PPP, and Customed, Inc. had used such disbursements. (Exhibit K, BPPR's bank statement for PRHS; Exhibit L, BPPR's bank statement for Customed).

15. On June 26, 2020, the Debtors filed the monthly operating report for May 2020 (Case No. 19-01022, Docket No. 475; Case No. 19-01023, Docket No. 304).

16. On July 13, 2020, the U.S. Trustee filed the *Motions to Dismiss* (Case No. 19-01022, Docket No. 488, Case No. 19-01023, Docket No. 316).

17. Debtors' request to close the BPPR's non-debtor-in-possession accounts was submitted on or about July 13, 2020. (Exhibits M and N).

18. The closure of the BPPR's non-debtor-in-possession accounts was "effected" on or about July 24, 2020. (Exhibit O).

19. On July 27, 2020, the Debtors filed their replies to the *Motions to Dismiss* (Case No. 19-01022, Docket Nos. 502 and 504; Case No. 19-01023, Docket Nos. 328 and 330).

20. Debtors filed the monthly operating report for June 2020 on July 27, 2020. (Case No.19-01022, Docket No. 503; Case No. 19-01023, Docket No. 329).

POSITION OF THE PARTIES:

The UST's Position:

The UST clarifies that it does not represent the SBA or any other party and as such the UST's arguments in its motions to dismiss are not made on behalf the SBA or any other party in interest. The Debtors' allegations that the UST lacks standing to file the motions to dismiss is incorrect. The UST has authority to move for dismissal or conversion to chapter 7 of the chapter 11 for cause pursuant to 11 U.S.C. §307 and 28 U.S.C. §586(a)(3), and (a)(8).

The UST argues that the cases should be dismissed based pursuant to 11 U.S.C. §1112(b)(1) for bad faith or lack of good faith due to the Debtors' failure to obtain authorization to request the PPP loan; and under 11 U.S.C. §1112(b)(4)(B), (F), and (H). The UST emphasizes (clarifies) that its motions to dismiss are not based on Debtors' qualifications or eligibility to apply for said loans, or if they had a "right" to apply and obtain these PPP loans, but on the Debtors' failure to comply with its statutory duties of disclosure and request prior authorization. Moreover, any relief from and/or against the SBA should be pursued through other mechanisms, and not through the contested matter in the motions to dismiss under section 11 U.S.C. §1112(b).

*Bad faith or lack of good faith*

The UST contends that the Debtors' bad faith or lack of good faith during the "maintenance of a bankruptcy case" where the good faith requirement has been also found "to be an implicit condition" is evinced by the following uncontested facts: (i) on June 23, 2020, two (2) or more months after the PPP loan was requested, obtained and disbursed, the Debtors filed *Informative Motions* disclosing that they had obtained PPP loans; (ii) the Debtors did not file a motion under 11 U.S.C. §364 and Fed. R. Bankr. P. 4001(c) prior to requesting the PPP loans, even if they did not ultimately qualify for the same. Failure to incur debts outside the ordinary course of business. "When a debtor fails to obtain court-approval under section 364 to incur debts outside the ordinary course of business, 'the lender may be relegated to the status of a general unsecured creditor, or the loan transaction may be cancelled or disregarded." 3 Collier on Bankruptcy P 364.03[2] (16th 2020)." The Debtors' failure to request court authorization before

entering into post-petition financing agreements 'may also support a finding of bad faith, warranting dismissal of the bankruptcy case.'" Id. (citing In re 239 Worth Ave. Corp., 236 B.R. 492, 495 (Bankr. S.D. Fl. 1999)). "…By not obtaining authorization from the Court prior to applying and obtaining the PPP loan, it is affirmatively alleged that Debtor did not disclose or 'concealed' financial transactions to the Court, the United States Trustee, and the creditors, whose rights might have been affected by the transaction;" and (iii) the Debtors on SBA Form 2483, answered "no" to the following question: "[i]s the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy?." Form 2483 stated that, "[i]f questions (1) or (2) below are answered "yes," the loan will not be approved." The Debtors knew that they were ineligible for the loans, given the pending bankruptcy proceedings, and that the loan would be denied if they answered "yes." The Debtors misrepresented to the SBA that it was currently involved in bankruptcy proceedings. The UST submits that there is not a *post-facto* 364(b) motion, much less in this case where more than three (3) months elapsed since the PPP loan was requested and some of the funds, if not all, have been spent.

*Dismissal under 11 U.S.C. §1112(b)(4)(B) & (F)*

The UST contends that there is "cause" to dismiss both cases pursuant to 11 U.S.C. §1112(b)(4)(B) for gross mismanagement of the estate pursuant to the same uncontested facts that constitute the Debtors' bad faith or lack of good faith; namely that the Debtors failure to file a 364 motion before requesting and obtaining the PPP loan and for submitting misleading information to the SBA in order to obtain the loans. "Mismanagement may include failure by debtor's manager to comply with the requirements of the Bankruptcy Code, including seeking approval for post-petition lending and borrowing, and the failure to keep the court and other parties in interest apprised of the debtor's business operations. 7 Collier on Bankruptcy P. 1112.04[6][b] (16th 2020)."

The UST argues that above-stated facts also support that cause for dismissal under 11 U.S.C. §1112(b)(4)(F) has been established.

*Dismissal under 11 U.S.C. §1112(b)(4)(H)*

The UST pursuant to 28 U.S.C. §586(a)(3) is directed to supervise the administration of all Chapter 11 cases. The UST established the Operating Guidelines and Reporting Requirements for Debtors in Possession and Chapter 11 Trustees ("Operating Guidelines") to comply with its

statutory duties and the requirements of the Bankruptcy Code and applicable rules. In particular, item #4[2] of the Operating Guidelines provides guidance regarding all of debtor's pre-petition bank accounts and that the same must be closed immediately upon the filing of the petition, and the debtor shall open new debtor-in-possession operating, payroll, and tax accounts. The Debtors did not fulfill their duty to cooperate with the UST because it opened one (1) or more non-debtor-in-possession accounts with BPPR to deposit the funds from the PPP loans, without seeking the Court's and the UST's approval. Moreover, the Debtors did not obtain approval to deviate from the Operating Guidelines as required. It is uncontested that the accounts in question are not debtor-in-possession accounts, which precluded the UST to perform its supervisory duties and "the purpose of 11 U.S.C. §345(a) was not served." The Debtors' duties and obligations under the Operating Guidelines are continued and subsist throughout the pendency of their Chapter 11 cases. Failure to comply with the UST's Operating Guidelines constitutes cause for dismissal pursuant to 11 U.S.C. §1112(b)(4)(H).

*No unusual circumstances*

The UST contends that the relief sought is in the best interest of creditors and the estate and argues that the Debtors' actions demonstrate that they had no intention of complying with their duties. As to the unusual circumstances alleged by the Debtors, The UST argues that they have not complied with the factual elements of section 1112(b)(2). Debtors have failed to establish unusual circumstances. The "unusual pandemic shutdown" may be considered a reasonable justification as to why the PPP loans were requested, but not as to why the Debtors failed to request prior authorization and give proper notice, and why they failed to inform the SBA that they were in bankruptcy proceedings. As to the last prong of section 1112(b)(2), time to cure the omission, the Debtors submit that they will comply if "applicable and necessary." The

---

[2] Item #4 of the Operating Guidelines states, in pertinent parts, as follows:

"All pre-petition bank accounts controlled by the debtor must be closed immediately upon the filing of the petition, and the debtor shall immediately open new debtor-in-possession operating, payroll, and tax accounts at a United States Trustee authorized depository… All business revenues must be deposited into the operating account, with amounts needed to fund the other accounts being transferred to those accounts as necessary… Any deviation from the three required debtor-in-possession accounts must be approved by the United States Trustee prior to the Initial Debtor Interview.

\*\*\*

Within 14 days of filing the petition, the debtor must provide the United States Trustee with a sworn statement describing all pre-petition accounts by depository name, account number, and account name verifying that each such pre-petition account has been closed… Proof of closing accounts and opening new accounts must be provided." (Case No. 19-01022; Docket No. 488; Case No. 19-01023; Docket No. 316).

-10-

requirement is not subject to discretion, it is mandatory. The UST argues that the Debtors' assertion is an admission that it did not comply with this requirement.

The UST further argues that Organic Power LLC v. Small Bus. Admin., 2020 Bankr. LEXIS 1721 (2020), is inapplicable to the matter before this court because the controversy in Organic was the plaintiff's qualification and eligibility to apply for a PPP loan and/or the SBA's alleged refusal to grant the same which is not alleged by the UST as a ground for dismissal, and is not the controversy before the court. However, the plaintiff in Organic obtained prior authorization from the court to apply for a PPP loan and was, therefore, required by the court to provide prior notice and to obtain authorization to disburse the funds, amongst other additional safeguards. Moreover, the Court in Organic neither established that the PPP loan was a "grant" as interpreted by the Debtors, and therefore, prior Court authorization was not required under 11 U.S.C. §364.

The UST submits that the court should neither allow Debtors to obtain, nor validate an unauthorized post-petition financing outside the ordinary course of business pursuant to any current or subsequently enacted statute as a consequence of the COVID-19 pandemic which duration is uncertain. The Debtors rely on the alleged economic benefits to the creditors in these cases, if the cases are not dismissed, *vis a vis* the integrity of the bankruptcy system and Debtors' duty to comply with their obligations. The UST alleges that, although the economic benefits or factors are to be considered, those are not the only factors that the court should consider, and the economic benefits should not preclude or avoid the grounds for dismissal.

The Debtors' Position

*Bad faith or lack of good faith*

The Debtors argue that their alleged misconduct is not incompatible with the functioning of the bankruptcy system and does not constitute an abuse or misuse of the bankruptcy process. The Debtors argue that the Court should follow the Fourth Circuit's decision in Carolin Corp. v. Miller, 886 F. 2d 693, 702 (4th Cir. 1989) which adds the element of objective futility to dismiss a case for lack of good faith, meaning that in order to dismiss a case for lack of good faith, there must be a finding of subjective bad faith and also a finding that the debtor has no realistic chance of reorganization. The Debtors argue that the two prongs are absent in the instant cases. As held in Carolin Corp. v. Miller, 886 F.2d 693, 702, the aim of the good faith standard "is to determine whether the petitioner's real  motivation is to abuse the reorganization process" and "to cause

-11-

hardship or delay to creditors by resort to the Chapter 11 device merely for the purpose of invoking the automatic stay, without an intent or ability to reorganize his financial activities." The motivation in filing the Chapter 11 petitions was not to abuse the bankruptcy process but to reorganize for the benefit of the estates and of their creditors. The Debtors argue that the bankruptcy proceedings are at an advanced stage, contrary to the basic focus of section 1112 which is to weed out unlikely reorganization prospects.

The Debtors contend that although the standard of good faith is based on the totality of the circumstances pertaining to each case, none of the factors/situations are present in these cases. The Debtors argue that even if assuming the execution of the PPP applications could be considered an adverse factor as cause for dismissal, it would not be enough. No single factor is enough to warrant dismissal of a Chapter 11 petition, it being necessary for the courts to consider the totality of the facts and circumstances of each individual case in order to do so. In re Harmony Holdings, LLC, 393 B.R. 409, 418 (Bankr. D.S.C. 2008); Finney v. Smith, 141 B.R. 94, 100 (E.D. Va. 1992); aff'd and modified, 992 F. 2d 43 (4th Cir. 1993). Debtors have disclosed all of their assets, have followed all court orders, and have not misrepresented material facts, factors not alleged by the UST. Although bankruptcy courts possess the authority to dismiss Chapter 11 cases for lack of good faith, they have broad discretion in determining whether there is sufficient bad faith to constitute cause for dismissal with the admonition that the remedy is not one to be lightly applied. In re Rognstand, 121 B.R. 45, 50 (Bankr. D. Haw. 1990); Carolin Corp. v. Miller, 886 F.2d at 700.

The Debtors further argue that they were not precluded from filing SBA Forms 2483, checking or not checking the corresponding bankruptcy disclosure box being a non-factor in processing the forms under the CARES Act as held in Organic Power LLC v. Small Bus. Admin., 2020 Bankr. LEXIS 1721 (Bankr. D.P.R. 2020). The Debtors further state that opening non debtors-in-possession accounts, which were opened post-petition and disclosed on their April 2020 operating reports[3] does not constitutes cause for dismissal under 11 U.S.C. 1112(b)(4)(B), (F) and (H). The Debtors state that all funds disbursed under the PPP and deposited in the BPPR accounts were transferred to Debtors' regular debtors-in-possession accounts with Banco Santander Puerto Rico and exclusively utilized for the purposes established by the PPP.

---

[3] The April 2020 operating reports were filed on June 18, 2020. (Case No. 19-01022, Docket No. 464; Case No. 19-01023; Docket No. 292).

The Debtors allege that, as held in Carolin Corp. v. Miller, 886 F.2d 693, 702 (4th Cir. 1989) the aim of the good faith standard "is to determine whether the petitioner's real motivation is to abuse the reorganization process" and "to cause hardship or delay to creditors by resort to the Chapter 11 device merely for the purpose of invoking the automatic stay, without an intent or ability to reorganize his financial activities" and that in these cases such elements are absent. The filing of the cases was not to abuse the bankruptcy process but to reorganize for the benefit of the estates and their creditors. No single factor is enough to warrant dismissal of a Chapter 11 petition, it being necessary for the courts to consider the totality of the facts and circumstances of each individual case in order to do so. In re Harmony Holdings, LLC, 393 B.R. 409, 418 (Bankr. D.S.C. 2008); Finney v. Smith, 141 B.R. 94, 100 (E.D. Va. 1992); aff'd and modified, 992 F. 2d 43 (4th Cir. 1993). In the cases, Debtors have disclosed all of their assets, have followed all court orders, and have not misrepresented material facts, factors not alleged by the UST. Although bankruptcy courts possess the authority to dismiss Chapter 11 cases for lack of good faith, they have broad discretion in determining whether there is sufficient bad faith to constitute cause for dismissal with the admonition that the remedy is not one to be lightly applied. In re Rognstand, 121 B.R. 45, 50 (Bankr. D. Haw. 1990); Carolin Corp. v. Miller, 886 F.2d at 700. The court in Carolin Corp. held that subjective bad faith is not sufficient by itself, and a finding of "objective futility" is also required. Under this standard even if subjective bad faith in filing could properly be found, dismissal is not warranted if futility i.e., whether a reorganization is realistically possible within a reasonable amount of time cannot be also found. The Debtors allege that in these cases, none of the prongs are present.

The Debtors further argue that none of the factors considered in In re Pittsfield Weaving Co., 393 B.R. 271, 276 (Bankr. D.N.H. 2008), as cause for dismissal under 11 U.S.C. §1112(b) are present here. Contrary to Pittsfield, the Debtors have filed their monthly operating reports, have sufficient capital to stay in business and have already proposed a plan soon to be amended. Moreover, in Pittsfield, the Court dismissed the case after finding that the UST had shown cause, that there were no unusual circumstances that established that conversion or dismissal was not in the best interests of the creditors and the estate.

The Debtors contend that the UST's allegations lack any evidentiary basis to establish Debtors' lack of good faith and by extension that the Debtors have committed any fraud as a result of the PPP process. The Debtors further argue that the obtention of the loans under the PPP does not constitute the bad faith required by section 1112(b) to consider the dismissal or conversion to

-13-

Chapter 7. Even if this factor could be considered cause under the non-exclusive listing of section 1112(b)(4), under the facts of these cases and their advanced stage, and under the equitable powers of the Court, it should not be enough to warrant dismissal.

*Dismissal under 11 U.S.C. §1112(b)(4)(B), (F) and (H)*

The Debtors argue that gross mismanagement of the estate under section 1112(b)(4)(B) based upon the Debtors' failure to request authorization from the court for a post-petition loan and keeping parties in interest in the dark as to the Debtors' operations are inapplicable in the instant cases due to the following: (i) under the Bankruptcy Code, the Debtors may obtain grants, even if classified as loans, without having to request leave from court; (ii) as debtors in possession they could obtain the grants/loans under the PPP in the regular course of business; and (iii) on June 23, 2020, the Debtors filed *Informative Motions* disclosing of the circumstances leading to the obtention of the funds from the loans/grants under the PPP; the deposit of the proceeds with BPPR; their use and the Debtors' president commitment to return the funds, if legally required, in the event the Debtors are unable to do so. The Debtors disclosed the receipt of the PPP funds and of the accounts with BPPR in the April 2020 monthly operating report.

As to dismissal pursuant to 11 U.S.C. §1112(b)(4)(F), there must be a failure on the debtors' part to timely file or report information as required by other provisions of the Bankruptcy Code. The Debtors argue that the UST failed to submit any factual allegation to support such a conclusion.

The Debtors argue that dismissal pursuant to section 1112(b)(4)(H) is unfounded because the Debtors have complied with all of the requirements under 11 U.S.C. §521 and have not deviated from the requirements of the debtor-in-possession bank accounts for their intended purpose. The Debtors assert that the opening of the two separate bank accounts with BPPR were exclusively used for the deposit of the PPP disbursements which were transferred to Debtors in possession and strictly used for the purposes of the PPP under the guidelines of the SBA.

*Unusual circumstances*

The Debtors argue that the circumstances surrounding the Debtors' Chapter 11 proceedings clearly fall under the scope of 11 U.S.C. §1112(b)(2) inter alia, precluding their dismissal because "…the PPP grants were processed by Mr. Santos with the best interests of the Debtors' estates and its creditors in mind, for which there was a reasonable justification, under an unusual pandemic shutdown, which otherwise would have resulted in the collapse of Debtors' businesses, to their detriment and that of their creditors, at a stage when (i) there is a reasonable

likelihood that a plan will be confirmed within a reasonable period of time considering, *inter alia*, [the] agreement in progress and that the grounds for dismissal alleged by the U.S. Trustee refer to an act or omission of the Debtors, if any, other than under paragraph (4)(A) (substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation), for which there existed a reasonable justification and if applicable and necessary will be cured within any reasonable period of time which may be fixed by the Court." (Case No. 19-01022, Docket No. 502; Case No. 19-01023, Case No. 328).

The Debtors suggest that the court should follow the decision of Organic Power LLC v. Small Bus. Admin. which decided the nature of the PPP as a grant.

The Debtors further argue that it is of particular importance in this case that the Debtors are on the road to reorganization, in the process of reaching the Agreement with the Lenders which will result in a confirmable Amended Plan of Reorganization, providing distribution to all creditors, without which there would be a run to the court house, with Debtors' substantial assets most likely going to the Lenders. "Debtors are in the process of filing their Amended Joint Plan and Amended Disclosure Statement, which will include the Agreement, are also in the process of obtaining their financing from Acrecent Financial Corporation, which together with the Agreement will result in the Plan being feasible and confirmable, with dividends to Debtors' creditors body."

**Applicable Law and Analysis**

The court finds that the UST has standing to file a motion to dismiss pursuant to 11 U.S.C. §1112(b) and is required to do so under 28 U.S.C. §586(a)(8)[4] and 11 U.S.C. §307[5].

Section 1112(b) of the Bankruptcy Code mandates the bankruptcy court, after notice and a hearing, convert or dismiss a chapter 11 case, if the movant establishes one of the enumerated bases for cause by a preponderance of the evidence pursuant to section 1112(b)(4) and the case is

---

[4] 28 U.S.C. §586(a)(8) provides in pertinent part that: "(a) Each United States trustee, within the region for which such United States trustee, shall –
    (8) in any case in which the United States trustee finds material grounds for any relief under section 1112 of title 11, apply promptly after making that finding to the court for relief." 28 U.S.C. §586(a)(8).

[5] 11 U.S.C. §307 provides: "The United States trustee may raise and may appear and be heard on any issue in any case or proceeding under this title but may not file a plan pursuant to section 1121(c) of this title."

-15-

devoid of unusual circumstances pursuant to 11 U.S.C. §1112(b)(2). Section 1112(b)(1) and (2)

provide, in pertinent part:

> (1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

> (2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that –

>> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

>> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph 4(A)—
>> (i)   for which there exists a reasonable justification for the act or omission; and
>> (ii)  that will be cured within a reasonable period of time fixed by the court."

11 U.S.C. §1112(b)(1) and (b)(2).

Section 1112(b)(1) "invokes a two-step analysis, first to determine whether 'cause' exists either to dismiss or convert the chapter 11 proceeding to a chapter 7 proceeding, and second to determine which option is in the best interest of creditors and the estate.'" In re Costa Bonita Beach Resort, Inc., 513 B.R. 184, 200 (Bankr. D.P.R. 2014) (quoting Rolex Corp. v. Associated Materials, Inc. (In re Superior Siding & Window, Inc.), 14 F. 3d 240, 242 (4th Cir. 1994), and citing In re Mech. Maint., Inc., 128 B.R. 382, 386 (E.D. Pa. 1991)); see also In re Hoover, 828 F. 3d at 8 (similarly describing a two-step inquiry); Francis v. Harrington (In re Francis), 2019 Bankr. Lexis 826, *10 (B.A.P. 1st Cir. 2019).  Once "cause" is established, a court is required to consider whether to dismiss or convert the case considering the best interest of creditors and the estate.

"[T]he inquiry for [the second] element cannot be completed without comparing the creditors' interests in bankruptcy with those they would have under state law." In re Cont'l Holdings, Inc., 170 B.R. 919, 927 (Bankr. N.D. Ohio 1994) (quoting In re Superior Siding & Window, Inc., 14 F. 3d at 243).

The initial burden is on the movant to establish by a preponderance of the evidence standard that there is 'cause' for either conversion or dismissal of the Chapter 11 case, whichever is in the best interests of creditors and the estate. Once the movant establishes "cause," the burden shifts to the debtor to prove (evince) the "unusual circumstances" that establish that dismissal or conversion to chapter 7 is not in the best interests or creditors and the estate. Richard Levin & Henry J. Sommer, 7 Collier on Bankruptcy, ¶1112.05[2] (16th ed. 2020).   Once "cause" has been established, "the court's discretion is limited; it must grant some form of relief unless §1112(b)(2) applies" In re Costa Bonita Beach Resort, Inc., 513 B.R. 184, 195 (Bankr. D.P.R. 2014); In re Korn, 523 B.R. 453, 465 (Bankr. E.D. Pa. 2014) (footnote omitted); Francis v. Harrington (In re Francis), 2019 Bankr. LEXIS 826, *12, 2019 WL 1265316 (B.A.P. 1st Cir. 2019). In order for the defense under 11 U.S.C. §1112(b)(2) to apply, the respondent/objecting party must establish "unusual circumstances" that evince that conversion or dismissal is not in the best interest of creditors and must also establish five other elements; namely: (1) conversion or dismissal "is not in the best interests of creditors and the estate;" (2) there is a reasonable likelihood that a plan will be confirmed within the applicable time periods or within a reasonable time; (3) the grounds for dismissal include an act or omission of the debtor other than under paragraph (4)(A); (4) there is a reasonable justification for the act or omission of the debtor; and (5) the act or omission may be cured within a reasonable time fixed by the court. In re Korn, 523 B.R. at 465; 11 U.S.C. §1112(b)(2)(A) & (B).

The bankruptcy court retains discretion in determining whether unusual circumstances exist and whether conversion or dismissal is in the best interests of the creditors and the estate. Costa Bonita Beach Resort, Inc., 513 B.R. at 195 (citing Gilroy v. Ameriquest Mortg. Co. (In re Gilroy), 2008 Bankr. LEXIS 3968, 2008 WL 4531982, (B.A.P. 1st Cir. 2008)); In re Korn, 523 B.R. at 465. A determination of unusual circumstances is fact intensive and contemplates facts that are not common to Chapter 11 cases. See Richard Levin & Henry J. Sommer, 7 Collier on Bankruptcy, ¶1112.05[2] (16th ed. 2020). Absent unusual circumstances, the statute requires conversion to chapter 7 or dismissal of the case, unless the court determines that the appointment of a trustee or an examiner under section 1104(a) is in the best interests of creditors or the estate. 11 U.S.C. §1112(b)(1); Richard Levin & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.04[4] (16th ed. 2020). "Likewise, if the moving party seeks dismissal rather than conversion, or conversion rather than dismissal, the moving party should demonstrate why the requested alternative is in the best interests of the creditors and the estate" Id.

*"Cause" under 11 U.S.C. §1112(b)(4)*

Although Section 1112(b)(4) fails to define what the term "cause" means, it provides a list of circumstances that constitute "cause" for conversion or dismissal. This list is non-exhaustive and therefore a case may be dismissed or converted for other causes. In re Costa Bonita Beach Resort, Inc. 513 B.R. at 196 citing (In re AmeriCERT, Inc., 360 B.R. at 401; Tuli v. U.S. Trustee, 124 Fed. Appx. 830, 831 (5th Cir. 2005); In re Gonic Realty Trust, 909 F. 2d 624, 626-27 (1st Cir. 1990) ("The court may have discretion in determining what additional circumstances, not enumerated in section 1112(b)(4), constitute cause"). See also; Richard Levin & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.04[6] (16th ed. 2020) ("The list should read in the disjunctive, utilizing the term 'or,' rather than 'and'. Otherwise, this section would lead to an absurd result"). "Some of the enumerated bases for cause under section 1112(b)(4) are more subjective than others"

-18-

Richard Levin & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.04[4]. However, if the basis of cause is based on an objective event, then the statute does not provide unfettered discretion in determining whether cause exists. "Similarly, subsections 1112(b)(4)(B), providing that 'gross' mismanagement constitutes cause, and 1112(b)(4)(F), providing that an unexcused failure to satisfy timely any filing or reporting requirement, each give the court implicit discretion in determining whether the mismanagement was sufficiently gross or the failure to file reports was sufficiently unexcused to constitute cause." Id.

Good Faith Requirement

Lack of good faith (or bad faith) may be grounds for dismissal under section 1112(b). This court in In re Costa Bonita Beach Resort, Inc., 479 B.R. 14, 39-40 (Bankr. D.P.R. 2012) held that lack of good faith (or bad faith) in filing a Chapter 11 petition constitutes "cause" to dismiss a Chapter 11 petition pursuant to 11 U.S.C. §1112(b)(1). This court also rejected the use of a mechanical checklist approach to determine lack of good faith (or bad faith) for all cases, irrespective of whether they pertain to the SARE category under 11 U.S.C. §101(51B). This court in In re Costa Bonita Beach Resort, Inc., as part of its analysis of whether lack of good faith in the filing of a bankruptcy petition is a cause for dismissal stated the following:

> "Good faith is not a statutory requirement for the filing of a Chapter 11 petition. However, it is a requirement for a Chapter 11 plan to be confirmed. 11 U.S.C. §1129(a)(3). The unsettled issue is whether lack of good faith (or bad faith) may constitute 'cause' to dismiss a Chapter 11 petition under 11 U.S.C. §1112(b)(1). See Ali M.M. Mojdehi & Janet Dean Gertz, The Implicit "Good Faith" Requirement in Chapter 11 Liquidations: A Rule in Search of Rationale?, 14 Am. Bankr. Inst. L. Rev. 143 (2006). Any determination of good faith, or lack of good faith (bad faith) is fact intensive and must consider the totality of circumstances on a case by case basis. In Chapter 11 cases the court must carefully consider the distinctions between liquidation and reorganization as both are valid objectives under the Bankruptcy Code." Id. 479 B.R. at 39.

Much has been written about lack of good faith (or bad faith) as a "cause" for dismissal in the filing of a Chapter 11 petition, but there is little to none jurisprudence regarding bad faith in

the maintenance of a Chapter 11 bankruptcy proceeding as "cause" for dismissal. This particular aspect of the concept of good faith has primarily been discussed in the abstract sense as a concept in general terms, but lacking materialization in the form of jurisprudence. "As the Fifth Circuit Court of Appeals explained: 'Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings." Richard Levin & Henry J. Sommer, 7 Collier on Bankruptcy, ¶1112.07 (citing Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.), 779 F. 2d 1068, 1071 (5th Cir. 1986). "In general, a court may dismiss any case for lack of good faith in order to prevent abuse of the chapter 11 process or in response to misconduct that is incompatible with the functioning of the bankruptcy system." Richard Levin & Henry J. Sommer, 7 Collier on Bankruptcy, ¶1112.07[1]. One of the basic tenets of the good faith doctrine is that bankruptcy relief is generally limited to the "honest but unfortunate debtor." Brown v. Felsen, 442 U.S. 127, 128, 99 S. Ct. 2205, 60 L. Ed. 2d 767 (1979) (quoting Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S. Ct. 695, 78 L. Ed. 1230 (1934). "'Good faith' implies an honest intent and genuine desire on the part of the petitioner to use the statutory process to effect a plan of reorganization and not merely as a device to serve some sinister or unworthy purpose" In re Metropolitan Realty Corp., 433 F. 2d 676, 678 (5th Cir. 1970) (citing Treatise)), cert. denied, 401 U.S. 1008, 91 S. Ct. 1251, 28 L. Ed. 544 (1971).

The Debtors argue that this court should adhere to the Fourth Circuit's standard of dismissal based on lack of good faith (or bad faith) which requires the finding of two components: (i) subjective bad faith; and (2) "objective futility" which means that the debtor has no realistic chance of reorganization. The court in Carolin Corp. v. Miller, 886 F. 2d 693, 701, held that subjective bad faith is not sufficient and a finding of "objective futility" was also required. The counterargument is that the "objective futility" component is already included separately in some

of the other enumerated causes for dismissal or conversion to chapter 7; such as 11 U.S.C. §1112(b)((4)(A), (J), (M), and (N) and the result is that it nullifies (invalidates) lack of good faith (or bad faith) as a separate "cause" for dismissal or conversion to chapter 7. Richard Levin & Henry J. Sommer, 7 Collier on Bankruptcy, ¶1112.07[6][a]. Section 1112(b) is designed to act as a funnel, thus eliminating unlikely reorganization prospects based on different circumstances (scenarios). "The basic focus of this section [1112(b)(4)] is to weed out unlikely reorganization prospects even though the debtor's intentions at the time of the filing may be strictly honorable. As the Second Circuit stated: "The purpose of §1112(b) is not to test a debtor's good faith; it is to provide relief where the debtor's efforts, however, heroic, have proven inadequate to the task of reorganizing his affairs effectively within a reasonable amount of time." Richard Levin & Henry J. Sommer, 7 Collier on Bankruptcy, ¶1112.07[1] (quoting In re Tiana Queen Motel, Inc., 749 F. 2d 146, 152 (2d Cir. 1984), cert. denied, 471 U.S. 1138, 105 S. Ct. 2681, 86 L. Ed. 2d 699 (1985).

This court adheres to the subjective bad faith based on the totality of circumstances as an independent "cause" for dismissal or conversion to chapter 7 for the reasons stated above. Moreover, if a movant has a "cause" for dismissal under one of the enumerated scenarios ("causes"), then it (he or she) should peg its (his or her) argument to that particular "cause", unless the movant's arguments (particular scenarios) are not listed under the enumerated "causes," such as lack of good faith (or subjective bad faith) or any other "cause" not listed that warrants dismissal or conversion to chapter 7. The UST argues under the same circumstances (uncontested facts), three (3) different "causes" for dismissal or conversion to chapter 7, namely; gross mismanagement of the estate under section 1112(b)(4)(B); unexcused failure to satisfy timely any filing or reporting requirement under section 1112(b)(4)(F) and lack of good faith (or subjective bad faith). At this juncture, the court will focus on the enumerated "causes" of action which are based on objective events, even if the court has implicit discretion in determining whether the

mismanagement was sufficiently gross or the failure to file reports was sufficiently unexcused to constitute cause.

*Gross mismanagement under 11 U.S.C. §1112(b)(4)(B)*

Post-petition mismanagement of the estate has been found to include "…failure by debtor's manager to comply with the requirements of the Bankruptcy Code, including seeking approval for post-petition lending and borrowing, and the failure to keep the court and other parties in interest apprised of the debtor's business operations." Richard Levin & Henry J. Sommer, 7 Collier on Bankruptcy, ¶1112.04[6][b]. "Gross mismanagement may be found notwithstanding the debtor's management's good intentions. Failure to maintain an effective corporate management team has been held to constitute gross mismanagement." Id. "Bankruptcy courts have found a wide variety of conduct can establish gross mismanagement. For example, courts have found gross mismanagement due to a failure to attempt to recover property that arguably belonged to the estate. In re Lodge at Big Sky, LLC, 2011 Bankr. Lexis 2296, 2011 WL 2358146 (Bankr. D. Mont. 2011), and a 'failure to justify expenses, comply with financial reporting requirements, and keep accurate accounting records [leading] to a lack of control over estate cash,' In re Visicon Shareholders Trust, 478 B.R. 292, 309 (Bankr. S.D. Ohio 2012). This Court has previously found that a debtor in possession grossly mismanages the bankruptcy estate by failing to follow the Code and get the Court's approval for post-petition borrowing, paying pre-petition debts, and paying professionals. See, e.g. Wallace, 2010 Bankr. Lexis 261, 2010 WL 378351, at *4-5" In re Hoyle, 2013 Bankr. Lexis 420, at *40-41 (Bankr. D. Idaho 2013).

The court must also consider the detrimental effect post-petition mismanagement has caused or could potentially cause on the interest of the creditors. Section 1107(a)[6] sets forth the

_____

[6] Section 1107(a) provides: "subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the

-22-

duties of a debtor in possession. "The fiduciary duties of the debtor-in-possession, like the trustee extent to all parties interested in the bankruptcy estate. Commodity Futures Trading Com. v. Weintraub, 471 U.S. 343, 105 S. Ct. 1986, 85 L. Ed. 2d 372, 383 (1985). A debtor in possession does not act in its own interest but must act in the best interest of the creditors of the estate. J.T.R. Corp., 958 F. 2d at 604-605. The job of the debtor-in-possession is to make sure the creditors are paid." Grayson-Robinson Stores, Inc. v. Securities Exchange Commission, 320 F. 2d 940 (2d. Cir. 1963." In re Bowman, 181 B.R. 836, 843 (Bankr. D. Md. 1995). The debtor bears the responsibility to keep the Court and other parties in interest informed of its business operations as part of the debtor's fiduciary duties towards its creditors. Nester v. Gateway Access Solutions, Inc. (In re Gateway Access Solutions, Inc.), 374 B.R. 556, 565 (Bankr. M.D. Pa. 2007) (citing Petit v. New England Mortg. Servs., Inc., 182 B.R. 64, 69 (D. Me. 1995)).

*Unexcused failure to satisfy timely filing or reporting under 11U.S.C. §1112(b)(4)(F)*

Section 1112(b)(4)(F) establishes as an enumerated "cause" for dismissal or conversion the, "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter." 11 U.S.C. §1112(b)(4)(F). "However, by providing that the failure to report or file must be unexcused in order to constitute cause for dismissal or conversion, the statute provides to the court discretion in determining whether such cause has been established. 'By inference the court, therefore, has the ability and some discretion to determine what is an 'excused' or 'unexcused' failure to 'timely file' the designated documents'" Richard Levin & Henry J. Sommer, 7 Collier on Bankruptcy, ¶1112.04[6][f] (citing In re Franmar, Inc., 361 B.R. 170, 178-179 (Bankr. D. Colo. 2006).

*Failure to Timely Provide Information or Attend Meetings under 11 U.S.C. §1112(b)(4)(H)*

---

duties specified in sections 1106(a)(2), (3) and (4) of this title, of a trustee serving in a case under this chapter." 11 U.S.C. §1107(a).

Section 1112(b)(4)(H) establishes as an enumerated "cause" for dismissal or conversion the "failure timely to provide information or attend meetings reasonably requested by the United States Trustee (or the bankruptcy administrator, if any)." 11 U.S.C.§1112(b)(4)(H). "Courts have noticed that this section is awkwardly worded. This section has been interpreted to mean 'failure to timely provide information or attend meetings reasonably requested.'" Richard Levin & Henry J. Sommer, 7 Collier on Bankruptcy, ¶1112.04[6][h]. Section 521 requires the debtor to perform certain duties and provide the court, the United States Trustee and parties in interest with certain documents. Id. Under 11 U.S.C. §1112(b)(4)(H), a debtor's failure timely to provide information reasonably requested by the UST does not need to be "unexcused" to constitute "cause." Andover Covered Bridge, LLC v. Harrington (In re Andover Covered Bridge, LLC), 553 B.R. 162, 173-174 (1st Cir. B.A.P. 2016). "However, a delayed response by the debtor is not always viewed as 'cause' to dismiss or convert a case." Richard Levin & Henry J. Sommer, 7 Collier on Bankruptcy, ¶1112.04[6][h].

The United States Trustee pursuant to 28 U.S.C. §586(a)(3) must comply with various statutory duties regarding the administration of cases under chapter 11 which include; monitoring plans and disclosure statements; reviewing applications for compensation and reimbursement; ensuring that all required reports, schedules and fees are timely filed; and reporting possible criminal activity. 28 U.S.C. §586(a)(3). The United States Trustee established the *Operating Guidelines and Reporting Requirements for Debtors in Possession and Chapter 11 Trustees* to comply with its supervisory duties in the administration of Chapter 11 cases and ensure that the debtors meet their statutory duties. The Operating Guidelines in Region 21 of the United States require Chapter 11 debtors to close their pre-petition bank accounts and open new debtor-in-possession operating, payroll and tax accounts at a United States Trustee authorized depository. The debtor must provide the UST within 14 days of filing the petition, a sworn statement describing all pre-petition accounts

by depository name, account number, and account name, verifying that each such pre-petition account has been closed. The Operating Guidelines require that the debtor maintain bank records and canceled checks and provide them to the United States Trustee as required by the Monthly Operating Report instructions. The Operating Guidelines for Region 21 also provide that timely compliance with these requirements is essential and that failure to comply may result in a motion to dismiss or conversion. The Operating Guidelines also establish that a request that these requirements be waived or varied must be submitted in writing to the corresponding UST field office. https://www.justice.gov/ustregionsr21/file/ch11_guidelines_reporting_req.pdf/download.

Discussion

In the instant case, on June 23, 2020, the Debtors filed an *Informative Motion* in each case disclosing that they had requested and received the PPP funds after requesting said funds on April 6, 2020. The Debtors disclosed in their April 2020 monthly operating reports which were filed on June 18, 2020 (after an extension to file the April 2020 monthly operating report was requested and granted by the court), the receipt of the PPP funds and the related bank accounts in which these funds were deposited. The court finds that the Debtors informed the parties in interest as to the request and receipt of the PPP funds, but did so two and a half months after it had requested said funds and the transaction had been completed. According to the claims register, 76 proof of claims have been filed in the case of Puerto Rico Hospital Supply, Inc. and 34 proof of claims in the case of Customed, Inc. The court notes that none of these creditors have joined the UST's motion to dismiss.

The UST contends that there is "cause" to dismiss both cases pursuant to 11 U.S.C. §1112(b)(4)(B) and (F) for gross mismanagement of the estate and unexcused failure to satisfy timely any filing or reporting requirement pursuant to the same uncontested facts; namely that the Debtors failure to file a 364 motion before requesting and obtaining the PPP loan and for

-25-

submitting misleading information to the SBA in order to obtain the loans. "Mismanagement may include failure by debtor's manager to comply with the requirements of the Bankruptcy Code, including seeking approval for post-petition lending and borrowing, and the failure to keep the court and other parties in interest apprised of the debtor's business operations.

The UST argues that the Debtors' failure to request prior court authorization for post-petition financing constitutes "cause" for dismissal under 11 U.S.C. §1112(b)(4)(B), (F). The UST argues that the applicable section to request said post-petition financing is 364(b) and Fed. R. Bankr. P. 4001(c)[7] because it is not in the ordinary course of business and thus, prior court authorization is required. The Debtors contend that the applicable section is 364(a) because the request for the PPP loan is in the ordinary course of business and there is no need for court approval. The court finds that the issue of whether it is in the ordinary course of business or not is inapposite because the Debtors were specifically excluded because they were in bankruptcy to request said funds. The simple argument translates into requesting court authorization for a post-petition loan for which bankruptcy debtors are specifically excluded from obtaining. If the premise is that a debtor is ineligible for said loan (PPP funds), then it follows that whether it is in the ordinary course of business or not is irrelevant. Therefore, the Debtors could not reasonably request permission under section 364(b)[8] for post-petition financing of a loan for which they were

---

[7] Fed. R. Bankr. P. 4001(c) provides in pertinent part:
> "(A) a motion for authority to obtain credit shall be made in accordance with Rule 9014 and shall be accompanied by a copy of the credit agreement and a proposed form of order.
> (B) The motion shall consist of or (if the motion is more than five pages in length) begin with a concise statement of the relief requested, not to exceed five pages, that lists or summarizes, and sets out the location within the relevant documents of, all material provisions of the proposed credit agreement and form of order, including interest rate, maturity, events of default, liens, borrowing limits, and borrowing conditions. If the proposed credit agreement or form or order includes any of the provisions listed below, the concise statement shall also: briefly list or summarize each one; identify its specific location in the proposed agreement and form of order; and identify any such provision that is proposed to remain in effect if interim approval is granted, but final relief is denied, as provided under Rule 4001(c)(2)." Fed. R. Bankr. P. 4001(c)(A), (B)

[8] Section 364 provides in pertinent part:
> "(a) If the trustee is authorized to operate the business of the debtor under section 721, 1108, 1183, 1184, 1203, 1204, or 1304 of this title, unless the court orders otherwise, the trustee may obtain unsecured credit

ineligible (did not qualify for/excluded). The court notes that in the case of In re Organic Power, LLC, (Case No. 19-01789; Adv. Proc. 20-00055), the debtor requested the PPP loan in two different banks in Puerto Rico without first requesting prior court authorization pursuant to section 364 and Fed. R. Bankr. P. 4001(c). The loan applications were denied by two different banks because the debtor was currently in bankruptcy proceedings. Organic Power, LLC filed an adversary proceeding requesting a temporary restraining order against the SBA for discriminating against it in violation of 11 U.S.C. §525(a) by excluding a bankruptcy debtor from the Paycheck Protection Program. The temporary restraining order under Fed. R. Bankr. P. 7065 was granted by the court. Organic Power, LLC v. Small Bus. Admin. 2020 Bankr. Lexis 1721 (Bankr. D.P.R. 2020). The court in Organic Power, LLC found that PPP funds "should be treated as a grant program." Assuming that the PPP funds are a grant and not a loan, then section 364 is not applicable. This court notes the determination made by the court in Organic Power as to PPP funds being a grant but does not accept or reject the same as the facts in this case do not require that it do so. For the reasons explained above, the court concludes that there is no "cause" for dismissal under 11 U.S.C. §1112(b)(4)(B) or (F) for the Debtors' failure to comply with the requirements of section 364 and Fed. R. Bankr. P. 4001(c).

The court will next consider whether the misrepresentations made by the Debtors' president in Forms 2483 for the Payroll Protection Program of the SBA, wherein it informed that the Debtors were not "presently involved in any bankruptcy" in order to obtain the PPP funds

---

and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense.

(b) The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur usecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense" 11 U.S.C. §364(a), (b).

constitute gross mismanagement of the estate. The form indicated that if the applicant answered that it was presently involved in bankruptcy proceedings, the loan would not be approved.

The court does not condone or validate the misrepresentations made by Debtors' president to the SBA but finds that it was an isolated incident of poor judgment. The Debtors have otherwise managed their affairs in accordance with the Bankruptcy Code and rules. The Debtors have disclosed their assets, have complied with the filing of the monthly operating reports, have filed a proposed plan of reorganization and are in further settlement discussions with the Lenders. Moreover, the court finds that despite the two-and-a-half-month delay in informing the court, the UST and parties in interest of the request and receipt of the PPP funds, it did not hinder in a significant manner the transparency of the Debtors' business operations and its financial situation. The court concludes that the Debtors' businesses do not suffer from general or systemic mismanagement or business incapacity. Therefore, the court finds that an isolated incident in which the Debtors misrepresented to the SBA that they were not in bankruptcy does not constitute gross mismanagement of the estate as a "cause" for dismissal or conversion pursuant to 11 U.S.C. §1112(b)(4)(B).

The UST argues that there are grounds for dismissal pursuant to 11 U.S.C. §1112(b)(4)(H) based upon the Debtors' failure to request approval to deviate from the Operating Guidelines as to the debtor-in-possession bank accounts. The court finds that the Debtors included the bank statements of the non- debtor-in possession bank accounts in the monthly operating reports and even though the accounts were not labeled debtor-in-possession accounts, the UST can still execute its supervisory duties over these bank accounts and request additional documentation if need be from the Debtors to determine whether the Debtors are making unauthorized payments for expenses outside the defined scope the PPP funds are supposed to be used for namely; payroll, rent, mortgage interest and utilities. The Debtors would make checks from the BPPR bank account

-28-

and deposit the same into the debtor-in-possession payroll account or debtor-in-possession operating account to pay directly from the DIP bank accounts the expenses which the UST could monitor. The court concludes that there is financial transparency and clarity regarding the financial transactions affecting the Debtors' estates for the UST to properly ascertain whether any improprieties have been committed by the Debtors. Consequently, the court finds that there is no "cause" for dismissal or conversion pursuant to 11 U.S.C. §1112(b)(4)(H).

## Conclusion

In view of the foregoing reasons, the motions to dismiss filed by the UST are hereby denied.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 2nd day of October 2020.

Enrique S. Lamoutte
United States Bankruptcy Judge

-29-