IN THE UNITED STATES BANKRU PTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 19-01022 |
| PUERTO RICO HOSPITAL SUPPLY INC | CHAPTER 11 |
| Debtor | |

OPINION AND ORDER

This case is before the court upon the *Special Claim Committee of the Financial Oversight Management Board's Motion to Vacate* filed by the Special Claims Committee of the Financial Oversight Management Board (the "SCC") (Docket No. 544)*;* the *Opposition to Special Claims Committee of the Financial Oversight Management Board's Motion to Vacate* filed by the Debtor, Puerto Rico Hospital Supply (the "Debtor" and/or "PRHS") (Docket No. 561) ; and the *Reply in Support of Motion to Vacate* filed by the SCC (Docket No. 565).

Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(B). Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409.

Relevant Procedural History

The Commonwealth of Puerto Rico filed its Proof of Claim #72 for the amount of $5,613,160.00 and stated as a basis for the claim, the following: "avoidance of constructive fraudulent transfer under 11 U.S.C §§ 548 and 550; disallowance of claims under 11 U.S.C. [§] 502; avoidance of fraudulent transfer under 31 L.P.R.A. §§ 3491-3500; and 2 L.P.R.A. § 97".

The Debtor filed an *Objection to Proof of Claim Number 72* arguing that the claim was filed without adequate supporting documentation and that the claimant had failed to request relief from the automatic stay to timely file the alleged avoidance actions and was, therefore, legally time barred to do so (Docket No. 394). Upon the claimant's failure to reply, the court granted the objection to the proof of claim on June 12, 2020 (Docket No. 443).

-1-

On August 27, 2020, the Special Claims Committee of the Financial and Oversight Management Board (the "SCC") as representative for the Commonwealth of Puerto Rico (the "Commonwealth"), filed its *Special Claims Committee of the Board of the Financial Oversight Management Board's Motion to Vacate* (Docket No. 544).

The SCC argues that it was first made aware of this Objection upon receipt on July 7, 2020 of an unrelated docket filing by mail service of process to Counsel for the SCC, which prompted a review of the Court's docket that revealed the existence of the *Objection* and the *Order*. The SCC alleges that the counsel's office had to abide to the health and safety orders from the Commonwealth of Massachusetts and had limited access to the offices. A "skeleton crew" for SCC counsel's office scanned and sent mail electronically. SCC counsel discloses that the mailing was inadvertently scanned and deleted and, as a result, was never viewed by SCC's counsel. "Therefore, the SCC had no actual knowledge of the Debtor's Objection and the Court's consequential denial of its Proof of Claim until it received an unrelated mailing on July 7, 2020 and conducted a subsequent review of the docket." The counsel alleges that, upon the discovery of the *Objection*, he contacted the Debtor's prior attorney and the current attorney. However, three weeks after contacting Attorney Cuprill, current attorney, he informed the SCC that the Debtor did not consent to the relief requested herein.

The SCC argues that the failure to respond was due to "mistake, inadvertence or excusable neglect" and requests reconsideration to the order pursuant to Fed. R. Civ. P. 60(b), incorporated to bankruptcy by Fed. R. Bankr. P. 9024. SCC argues that pursuant to Pioneer Inv. Servs. V. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395, 113 S. Ct. 1489, 1498, 123 L. Ed. 2d 74 (1993) the court must determine first whether the delay was caused by mistake or neglect, and then the Court must determine whether that neglect was excusable. To determine whether mistake or neglect is excusable, the Court must look at the totality of the circumstances. See Welch & Forbes, Inc. v. Cendant Corporation (In re Cendant Corporation Prides Litigation), 233 F. 3d 188, 196 (3d Cir. 2000). The court must weigh the mistake or neglect against other equitable factors such as "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." citing Pioneer at 395.

The SCC further argues that its failure to respond is excusable under the equities of the case. The Debtor has suffered no prejudice from the delay, there is a reasonable explanation for the delay, the SCC has acted in good faith and the SCC promptly acted to remediate the delay

immediately upon its discovery. The SCC alleges that the Covid-19 global pandemic and associated disruption and disablement of law offices from normal procedures should be considered by this Court to be a "unique or extraordinary circumstance" worthy of relief under Rule 60(b). Office disruptions of this nature render neglect or excusable mistake. The mistake at issue is not a mere mistake in everyday office procedure. The SCC argues that the debtor has not suffered any prejudice due to the delay because the fact that the Debtor would have to litigate the claim if the order were vacated cannot be considered "prejudice". The SCC has not demonstrated bad faith in its inadvertent delay in responding to the Debtor's Objection to its Proof of Claim. Further, the SCC promptly filed this Motion to Vacate after discovering its delay and attempting to obtain the Debtor's consent to the relief, which favors granting the motion.

The Debtor, Puerto Rico Hospital Supply, filed its *Opposition to Special Claims Committee of the Financial Oversight Management Board's Motion to Vacate* (Docket No. 561). The Debtor argues that the Commonwealth of Massachusetts situation due to the Covid-19 pandemic is not unique, and that under similar circumstances, this Bankruptcy Court has been conducting hearings in the regular course of business through Skype. The Debtor argues that the allowance of the *Motion to Vacate* will cause prejudice to the Debtor, which already filed a disclosure statement and plan of reorganization. The Debtor cites the factors that the court should consider as parameters to allow the excusable neglect argument: "our evaluation of what constitutes excusable neglect is an equitable determination, taking into account the entire facts and circumstances surrounding the party's omission, such as the danger of prejudice to the non-movant, the length of the delay, the reason for the delay, and whether the movant acted in good faith." *Citing* Davila Alvarez v. Escuela de Medicina Universidad Central del Caribe, 257 F.3 58, 64 (1st Cir. 2001). Of these factors, the reason for delay is the most important one. In re Sheedy, 875 F.3d 740, 743 (1st Cir. 2017). The Debtor argues that the *Motion to Vacate* does not comply with the First Circuit's parameters of excusable neglect.

On September 18, 2020, the SCC filed its *Reply of Motion to Vacate* (Docket No. 565). The SCC states that its position is not factually misleading as alleged by the Debtor. It reinstates that an error occurred in the process, and the attorney team did not receive the filing and, as a result, did not respond. The SCC alleges that the Debtor acknowledged that the uniqueness and exceptional nature of the circumstances is a critical factor in determining whether "mistake, inadvertence, or excusable neglect" is sufficient cause to vacate an order under Rule 60. The Debtor did not argue that Covid-19 is not unique or exceptional. The Debtor argues that the

logistical complications caused by the pandemic is not unique to the state of Massachusetts, where SCC counsel practices. The SCC alleges that the Debtor itself alleged the unusualness of the pandemic shutdowns in its averments before this court in its replies to *Trustee's Motion to Dismiss*. Furthermore, the SCC appeals to the sentiment of the court, arguing that it has, itself, granted deference to other parties in different proceedings where the non-responsiveness of a party could be explained due to pandemic-related communications issues. "It is disappointing then, that the Debtors would request extraordinary relief from this Court premised upon their own extenuating circumstances during the pandemic, while arguing that the SCC is underserving of analogous relief as a matter of law." "The SCC does not seek to have its claim allowed, nor does it take a position on any plan filed by the Debtors or any motion to dismiss these cases. The SCC solely seeks to preserve its ability to resolve its claim with the Debtors through a productive exchange regarding its merits. The SCC respectfully asserts that it should not be denied that opportunity due to an administrative error resulting from a catastrophic global pandemic."

Applicable Law

In its pertinent part, § 502(j) states that "[a] claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." Additionally, Fed. R. Bankr. P. 3008 states that "[a] party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order."

The motion to vacate order filed by the SCC is pursuant to Fed. R. Civ. P. 60. Rule 60(b)(1) , which provides that a party may move for relief from a final judgment because of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). In <u>In re Temsco NC Inc.</u>, 537 B.R. 108, 126 (Bankr. D.P.R. 2015) this bankruptcy court referenced the Bankruptcy Court's summary in <u>In re O'Shaugnessy</u> to the Supreme Court's analysis in <u>Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993), for determining "excusable neglect" pursuant to Fed. R. Bankr. P. 9006(b)(1), as follows:

> "First, the movant must show that its actions constituted 'neglect.' Neglect can be established either by (1) circumstances beyond the movant's control, or (2) the movant's inadvertence, mistake or carelessness. Id. at 387-388. If neglect is shown, then the movant must prove that the neglect was 'excusable.' This entails a balancing test which includes review of the following factors: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; (4)

-4-

whether the movant acted in good faith. Id. at 395. These factors are nonexclusive; the test requires an equitable determination 'taking account of all relevant circumstances surrounding the part[y's] omission.' Id. (footnote omitted)." In re O'Shaughnessy, 252 B.R. at 731.

In In Re León, In re Leon, No. 17-06542, 2018 Bankr. LEXIS 1689, at *4 (Bankr. D.P.R. June 7, 2018) (B. K. Tester, BJ) the court stated:

"Demonstrating excusable neglect is a demanding standard" and the trial judge has "wide discretion" in dealing with litigants who make such claims. Santos-Santos v. Torres-Centeno, 842 F.3d 163, 169 (1st Cir. 2016) (citation and internal quotation marks omitted). Although many courts have indicated that Rule 60(b) motions should be granted liberally, this Circuit has taken a harsher tack. "Because Rule 60(b) is a vehicle for 'extraordinary relief,' motions invoking the rule should be granted 'only under exceptional circumstances.'" Torre v. Continental Ins. Co., 15 F.3d 12, 14-15 (1st Cir. 1994). (quoting Lepore v. Vidockler, 792 F.2d 272, 274 (1st Cir. 1986))."

A party seeking Rule 60(b) relief must show, at a bare minimum, "that his motion is timely; that exceptional circumstances exist, favoring extraordinary relief; that if the judgment is set aside, he has the right stuff to mount a potentially meritorious claim or defense; and that no unfair prejudice will accrue to the opposing parties should the motion be granted." Karak v. Bursaw Oil Corp., 288 F.3d 15, 19 (1st Cir. 2002); Skrabec v. Town of N. Attleboro, 878 F.3d 5, 9 (1st Cir. 2017).

However, "…an "exceptional justification" must be something more than an attorney's failure to monitor the court's electronic docket." Santos-Santos v. Torres-Centeno, 842 F.3d 163, 169 (1st Cir. 2016). An attorney has an ongoing responsibility to inquire into the status of a case. Davila-Alvarez v. Escuela de Medicina Universidad Cent. del Caribe, 257 F.3d 58, 65 (1st Cir. 2001).

### Discussion

The history of events leading to the present contested matter and the allegations by the parties show that the following facts are uncontested.

On July 8, 2019 "The Special Claims Committee of the Financial Oversight and Management Board, as Representative for [the] Commonwealth of Puerto Rico in the PROMESA Title III Case"[1] filed proof of claim number 72-1 in the amount of $5,613,160.00, on the basis of

---

[1] On May 3, 2017 the Financial Oversight and Management Board for Puerto Rico, as representative of the Commonwealth of Puerto Rico, pursuant to the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2170, filed a Title III case under PROMESA before the U. S. District Court for the District of Puerto Rico, case number 17-03283 LTS.

"Avoidance of constructive fraudulent transfer under 11 U.S.C. 548 and 550; disallowance of claims under 11 U.S.C. 502; avoidance of fraudulent transfer under 31 L.P.R.A. §§ 3491-3500; and 2 L.P.R.A. §97."[2] The proof of claim states in part 1.3 that notices to the creditor should be sent to Sunni P. Beville, Esq., Brown Rudnick LLP, One Financial Center, Boston MA 02111. As an addendum to the proof of claim, an exhibit listing a series of payments made to Puerto Rico Hospital Supply was included. The SCC states in the addendum that its "claim against the Debtor for $5,613,160.00 arises out of certain payments the Commonwealth of Puerto Rico (he "Commonwealth") made to the Debtor in the four years preceding the Commonwealth's PROMESA Title III filing in May 2017 (the "Prepetition Transfers"). The addendum further states that the "Prepetition Transfers" are avoidable and recoverable under sections 544, 548, and 550 of tile [sic] 11 of the United States Code (the "Bankruptcy Code"). Additionally, the Prepetition Transfers are avoidable and recoverable under 31 L.P.R.A. §§ 3491-3500 and 2 L.P.R.A. § 97."

On May 7, 2020 the Debtor filed an objection to proof of claim 72 filed by the Commonwealth of Puerto Rico on two grounds. First, that the proof of claim does not contain supporting documentation to determine the validity of the claim. Second, that the Claimant had failed to request the lifting of the automatic stay in this case in order to file an action in the PROMESA case. The objection had a thirty (30) day response time. Notice of the objection was given to Sunni P. Beville, Esq., Brown Rudnick LLP, One Financial Center, Boston MA 02111. The claimant did not file a response. The court notes that the above sequence follows PR LBR 3007-1(c) and (d). An order granting the Debtor's objection was entered on June 12, 2020 (dkt. #443) and notice of the order was given to all parties in interest, including the Commonwealth of Puerto Rico by first class mail to Sunni P. Beville, Esq., Brown Rudnick LLP, One Financial Center, Boston MA 02111 (dkt. #452).

The basis for the SCC's motion to vacate the order granting Debtor's objection to proof of claim 72 is that the failure to timely respond was the result of excusable neglect as provided for in Fed. R. Civ. P. 60(b). The substantive grounds in Debtor's objection were not specifically addressed.

Considering the above, the court now evaluates if SCC's actions constitute excusable neglect. The court acknowledges that the Covid-19 pandemic was beyond the control of the

---

[2] The referenced sections in the proof of claim are those under which the Commonwealth of Puerto Rico in the PROMESA Title III case may base an adversary proceeding, if one is filed.

-6-

Movant SCC and that the sudden changes in office practices provoked by local state orders may not have been foreseeable. However, that the SCC's failure to subscribe to electronic notifications within the court's CM/ECF system and to establish quality control for internal office administrative procedures can be attributed to inadvertence, mistake or carelessness. Thus, the court finds that the movant incurred in neglect. However, the court must determine if the neglect is excusable weighting in the Pioneer factors.

1.) Danger of Prejudice to the Debtor

The movant argues that the fact that the Debtor would have to litigate the claim is not considered "prejudice" and references Williams v. iE, Inc. (In re iE, Inc.), Nos. CC-19-1307-FLTa, CC-19-1343-FLTa, 2020 Bankr. LEXIS 1808 (B.A.P. 9th Cir. June 22, 2020), which cites Wall St. Plaza, LLC v. JSJF Corp. (In re JSJF Corp.), 344 B.R. 94,102 (9th Cir. BAP 2006), aff'd and remanded, 227 F. App'x 718 (9th Cir. 2008) ("[P]rejudice requires more than simply having to litigate the merits of, or to pay, a claim- there must be some legal detriment to the party apposing.") However, a review of the claim filed by the SCC shows that the underlying claim is based on several legal provisions which require the filing of adversary proceedings in the district court under the Title III PROMESA case. Therefore, the prejudice to the Debtor would not be limited to litigating or paying the claim as the SCC suggests. Debtor would need to engage in litigation which requires a time investment and an accrual of expenses and attorneys' fees. The claim is in the amount of $5,613,160.00, and, as per the attached statement, it includes multiple payments received by PRHS from the Government of Puerto Rico since 2013 which allegedly constitute fraudulent transfers, without any explanation as to why they are considered fraudulent. The court notes that the Debtor's reorganization would be affected by the ensuing litigation of the alleged transfers. The court further finds that the prejudice to the Debtor extends beyond the mere litigation of the claim itself and therefore, this factor weights against the Movant, as vacating the order will cause prejudice to the Debtor.

The SCC argues that "…the Debtors would not be prejudiced by the Motion because they would not be relinquishing substantive rights regarding the SCC's proof of claim. Indeed, as indicated in the above-cited Omnibus Extension Motion, the SCC has negotiated out-of-court resolutions of many dozens of similar disputes- in many cases by voluntary dismissal, where defendants are able to provide sufficient documentation of contractual relationships with Puerto Rico government entities to show legal compliance. See Omnibus Extension Motion ¶19 (noting resolution of 108 proceedings in recent months)." The court however notes that PRHS is distinct

-7-

from the other entities referred to by the SCC, as it is currently in a reorganization process itself through Chapter 11. Additionally, the court notes that no judicial proceeding has been filed by the SCC and/or no evidence has been submitted to that extent. The court also notes that the SCC, through the filing of the proof of claim and by its own proffers, shifts the burden to PRHS to provide documentation for each transaction made with the Government of Puerto Rico from 2013 to 2017. Additionally, the fact that, at their own admittance, the SCC has entered in this type of negotiation should've led them to anticipate that the proof of claim filed in the present case would've been contested by the Debtor.

2.) Length of the Delay and its Potential Impact on Judicial Proceedings

The court finds no significant delay in the SCC's request that could cause harm the judicial proceedings. The Debtor has been immersed in litigation and negotiations in regard to medullar aspects of the PRHS's reorganization and, therefore, it is not until November 2, 2020 that it files the court an amended disclosure statement and amended chapter 11 plan. The *Objection to the Proof of Claim* was filed on May 7, 2020 (See Docket No. 394). The *Order* granting the *Objection* as unopposed was entered on June 12, 2020 (Docket No. 443). The *Motion to Vacate Order* was filed on August 27, 2020 (Docket No. 544). However, the Debtor's attorneys were previously notified of the SCC's intention to request the order to be vacated. Additionally, the court notes that the Debtor has not shown how the allowance or disallowance of the SCC's claim will impact the approval of the disclosure statement and/or confirmation of the plan. As a matter of fact, on December 2, 2020 the court entered an order approving the disclosure statement and scheduled the hearing on confirmation for December 30, 2020 (dkt. #648).

3.) The Reason for the Delay, and Whether it Was Within the Control of the Movant

The alleged reason for the delay, as explained by the SCC, was that the notification of the *Objection* and the *Order* were, allegedly, scanned and deleted, and, therefore, the attorney for the SCC nor its team received it. However, the court notes that proof of claim number 72 was filed on July 8, 2019. No one on behalf of the SCC signed up for notices under the Court's CM/ECF system and no one on their behalf filed a notice of appearance, requesting all notices. Although represented by attorneys of Massachusetts, the SCC is actively litigating in our jurisdiction within the Title III proceedings.

An attorney has an ongoing responsibility to inquire into the status of a case. Davila-Alvarez v. Escuela de Medicina Universidad Cent. del Caribe, 257 F.3d 58, 65 (1st Cir. 2001) and "…an "exceptional justification" must be something more than an attorney's failure to monitor the court's

electronic docket." Santos-Santos v. Torres-Centeno, 842 F.3d 163, 169 (1st Cir. 2016). The duty to monitor the electronic filings of the case is heighten because of the circumstances surrounding the Covid-19 pandemic. Although the Covid-19 is an extraordinary or unique situation the failure to timely respond is not exclusively attributable to the extraordinary situation, and the failure of the attorneys to participate of the proceedings through electronic noticing is a contributing factor. This is not the exceptional situation of a creditor outside of our jurisdiction. The fact that the SCC's attorneys are not authorized attorneys within the jurisdiction does not relieve them of their duty to monitor and track the record of the cases. The court finds that the delay was within the control of the Movants and therefore, weights this factor against the SCC. The court notes that this factor is paramount to find that the neglect was excusable.

4. Whether the Movant Acted in Good Faith

The record does not reflect that the SCC acted in bad faith and, therefore, the fourth factor weights in favor of the Movant.

Considering the above enumerated factors, the court finds that the SCC has failed to reach the demanding standard of excusable neglect. The prejudice to the Debtor and the fact that the delay was within the control of the SCC supports the denial of the relief requested by the Movant. The Covid-19 pandemic cannot be a justification to forgo the ongoing duty to inquire into the status of a case. Furthermore, the SCC failed to demonstrate or even argue to the court the potential merit of its claim. *See* Skrabec v. Town of N. Attleboro, *supra.*

### Conclusion

In view of the foregoing, the request to vacate the court's order at Docket No. 443 is hereby denied.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this December 4, 2020.

Enrique S. Lamoutte
United States Bankruptcy Judge

-9-